**KALTREIDER CONSTRUCTION, INC.,
Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

**Civ. A. No. 6890.**

United States District Court
M. D. Pennsylvania.

March 15, 1961.

Markowitz & Kagen, York, Pa., for plaintiff.

Charles K. Rice, Asst. Atty. Gen., Lyle M. Turner, Jerome Fink, Richard W. Per-kins, Attys., Department of Justice, Washington, D. C., Daniel H. Jenkins, U. S. Atty., Daniel R. Minnick, Asst. U. S. Atty., Scranton, Pa., for defendant.

FOLLMER, District Judge.

This is an action for the recovery of income taxes and interest paid for the year 1952. The sole question involved is: "Was the claim for refund, upon which the taxpayer relies as a basis for this Court's jurisdiction in this action, timely filed?" The matter is presently before the Court on defendant's motion for summary judgment. The parties stipulated that the said motion should be determined without oral hearing upon briefs pursuant to Rule 78 of the Federal Rules of Civil Procedure, 28 U.S.C., and Rule 50 of the local rules of this Court. Affidavits and briefs were submitted by both parties.

The undisputed facts in the case are as follows: On March 16, 1953 plaintiff duly filed a Federal income tax return for the calendar year 1952 and paid the taxes shown thereon to be due. On March 16, 1956 plaintiff filed an amended return showing additional income tax in the sum of $3,882.36, which it paid. On May 29, 1958, plaintiff filed a claim for refund of the afore-mentioned taxes. This claim for refund was rejected on the grounds that it was not timely filed. Plaintiff has admitted that none of the sums sought to be recovered in this action were paid subsequent to May 26, 1956.[1]

Plaintiff contends that on its amended return dated March 16, 1956 income tax in the sum of $3,882.36 was erroneously reported and paid by it; that at the time when the said amount was paid there was pending before the Tax Court of the United States the case of Kaltreider v. Commissioner of Internal Revenue, 28 T. C. 121, in which the Kaltreiders, husband and wife, contended that the money sought to be recovered by the United States was not due and owing by them

1. According to claim for refund, the payments were actually made as follows: Check No. 18520, dated March 15, 1956 for $3,289.69 and Check No. 18768, dated April 21, 1956 for $592.67, making a total of $3,882.36.

but that part of said income tax was due and owing by Kaltreider Construction, Inc., plaintiff herein; that for that reason the amended return was filed by the plaintiff corporation.

Plaintiff further avers that the Tax Court's decision was against the individual Kaltreiders, whereupon the latter appealed to the Court of Appeals of the Third Circuit. On May 21, 1958, the Court of Appeals in Kaltreider v. Commissioner of Internal Revenue, 255 F.2d 833, affirmed the decisions of the Tax Court.

The pertinent statutes here involved are as follows: 26 U.S.C. § 322 (1952 Ed.):

"(b) Limitation on allowance—

(1) Period of limitation.

"Unless a claim for credit or refund is filed by the taxpayer within three years from the time the return was filed by the taxpayer or within two years from the time the tax was paid, no credit or refund shall be allowed or made after the expiration of whichever of such periods expires the later. * * *"

26 U.S.C. § 7422 (1958 Ed.) Internal Revenue Code of 1954:

"§ 7422. Civil Actions for refund.

"(a) No suit prior to filing claim for refund.

"No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary or his delegate, according to the provisions of law in that regard, and the regulations of the Secretary or his delegate established in pursuance thereof."

Vol. 10, Mertens Law of Federal Income Taxation, Chap. 57, Page 31, § 57.-15, states as follows:

"Amended Returns. When the return required by law has been filed and thereafter an amended return is filed, the statute of limitations begins to run from the date the original return was filed, and the filing of the amended return does not operate to extend the statute. The first return, however, must be complete and meet the statutory requirements; the statute of limitations will begin only upon the filing of a proper return. It is not always easy to determine whether the problem involves a 'tentative,' 'defective,' 'amended' or 'original' return. Care must be exercised to prevent the facts from being confused by the terminology used."

It would seem to be clear that as to the content of the original return filed in this case on March 16, 1953 any claim for refund thereunder would have been barred March 16, 1956.

Plaintiff claims that on its amended return filed March 16, 1956 income was erroneously reported and additional tax in the amount of $3,882.36 was erroneously paid. The claim for refund of the tax paid on the amended return was filed May 29, 1958.

Counsel have not furnished me with a precedent directly in point and a careful research on my part has not disclosed any.

In Haggar Company v. Helvering, 308 U.S. 389, 394, 60 S.Ct. 337, 339, 84 L.Ed. 340, the Court said:

"All statutes must be construed in the light of their purpose. A literal reading of them which would lead to absurd results is to be avoided when they can be given a reasonable application consistent with their words and with the legislative purpose. * * *"

In that case an amended capital stock tax return filed within the extension period granted for filing its original return was held to be the taxpayer's first return within the meaning of Section 215(f) of the National Industrial Recovery Act (48 Stat. 195, 208). The Court further stat-

ed: (308 U.S. at page 395, 60 S.Ct. at page 340).

" * * * A timely amended return is as much a 'first return' for the purpose of fixing the capital stock value in contradistinction to returns for subsequent years, as is a single return filed by the taxpayer for the first tax year. * * *"

Further, (308 U.S. at page 396, 60 S.Ct. at page 340)

" * * * To construe 'first return' as meaning the first paper filed as a return, as distinguished from the paper containing a timely amendment, which, when filed is commonly known as the return for the year for which it is filed, is to defeat the purposes of the statute by dissociating the phrase from its context and from the legislative purpose in violation of the most elementary principles of statutory construction."

The amount involved in the present claim for refund has no reference to the return originally filed. The particular item was a matter of dispute in connection with the income tax return of Walter H. and Irene C. Kaltreider as individuals, as to which item their liability was established. See Kaltreider v. Commissioner of Internal Revenue, supra. Pending such determination, the corporation took the precautionary step of filing a supplemental corporate return, setting up this additional item and paying the tax thereon. It is this amount only for which a claim for refund was filed.

The Government's contention is that the three year statute of limitation began to run from the filing of what it terms the "original" return. In support of its contention it cites Zellerbach Paper Co. v. Helvering, 293 U.S. 172, 55 S.Ct. 127, 79 L.Ed. 264. That case involved a deficiency assessment and dealt with an increase in tax liability under an intervening income tax act and the Court held that the period of limitation began to run against the making of a deficiency assessment against the taxpayer, from the filing of the original return. Such holding, however, was based upon the fact that any increase of tax liability was ascertainable by simple computations from the original return and that the deficiency assessments in large amounts were based mainly on grounds unrelated to any changes in the law by reason of which the subsequent return was filed. It merely held that an amendment or supplement of a return already filed would not toll a limitation which had once begun to run.

Were we dealing here with matters disclosed by and moneys paid under the "original" return, this reasoning might well apply. However, the later Haggar case, quoted, supra, makes it evident that there was no intent to establish an inflexible rule that the period of limitation begins to run both as to assessments and claims for refund from the "original" return. The Haggar case specifically points out that an "amended" return may be a "first" return. It should also be noted that the statute as to the three year limitation on claim for refund does not say "original" return but merely "the" return. Likewise, Mertens Law of Federal Income Taxation, supra, cautions that "It is not always easy to determine whether the problem involves a 'tentative,' 'defective,' 'amended' or 'original' return." Certainly it is difficult to justify a statement that the period of limitation must run from the "original" return as to a claim for refund of a sum which has neither been paid pursuant to nor set forth or revealed in such return. This would appear to be one of the absurd results to which Haggar, supra, refers.

The Government has submitted nothing as to Congressional intent which would require the words "the return" in the statute to be interpreted as "the original return." The Government has received the tax both from the individuals and from the corporation. As far as the corporation is concerned, it is an overpayment. Even so, were it clear that the words of the statute were referable only to the original return in a situation such as now before us, of course, as the Court

stated in Kavanagh v. Noble, 332 U.S. 535, 538, 68 S.Ct. 235, 237, 92 L.Ed. 150,[2] "assuming that the Janney decision [Helvering v. Janney, 311 U.S. 189, 61 S.Ct. 241, 85 L.Ed. 118] makes clear that the taxpayer here made an overpayment, the loss which he now suffers from an application of § 322 (b) (1) is a loss which is inherent in the application of any period of limitations. Such periods are established to cut off rights, justifiable or not, that might otherwise be asserted and they must be strictly adhered to by the judiciary. * * * Remedies for resulting inequities are to be provided by Congress, not the courts." Nothing has been submitted which seems to justify such a result in the instant case.

In Rittenbaum v. United States, D.C. N.D.Ga., 109 F.Supp. 480, 483, the Court said:

"The opinion of Judge McCord in Allen v. South Atlantic S. S. Co. of Delaware, 5 Cir., 177 F.2d 257, 259, that

" 'It is without dispute that this taxpayer overpaid its tax for the year 1940 in a substantial amount. * * * and now the Government seeks to escape paying a just claim by pleading the statute of limitations. Under such circumstances, unless the mandate of the enactment inexorably requires such a construction, it would be manifestly unjust and inequitable to permit the Government to retain this tax. * * * ', is applicable here."

Equally pertinent are the Court's remarks in Dubuque Packing Company v. United States, D.C.N.D. Iowa, 126 F. Supp. 796, 799:

"The purpose of a statute of limitations is to compel the exercise of rights within a reasonable time after they accrue. A limitation is regarded as unreasonable that does not afford full opportunity to sue before the bar takes effect. * * * This concept of fair opportunity to sue is incorporated into Section 322(b) (1) through the medium of the tax return. A tax return which does not disclose the requisite information necessary for the taxing authorities to determine tax liability does not start the statute of limitation running because the taxing authorities have not had a fair opportunity to determine whether a claim against the taxpayer exists. * * * Likewise even in the face of a retroactive tax act requiring an additional return, the old return will commence the statute of limitations where it gave all the information necessary for the computation of the new tax. (Citing Zellerbach Paper Co. v. Helvering, supra.) * * *

* * * * *

" * * * As heretofore noted, a 'return' or 'payment' will start the statute running. To do so the return must define the tax obligation or give sufficient information to define the tax obligation. * * * In the case of a proper tax return the return itself defines the tax obligation. * * * In that case (Thomas v. Mercantile Nat. Bank, 5 Cir., 1953, 204 F.2d 943) the Court said, 204 F.2d at page 944:

" 'It would be illogical to hold * * * that the statute of limitation began to run against a claim for refund before the deficiency itself came into existence, and *before the fact that there was an overpayment, and if so the amount thereof, became ascertainable.*' "

The principle is applicable whether it be a deficiency as in Dubuque Packing Company, supra, or a claim for refund of an overpayment. Certainly the "return" which gave the information necessary for the computation of the tax here involved and gave sufficient information to define the tax obligation and furnish a basis of a tax refund claim was "the return" spoken of as the amended return of March 16, 1956, and started the three year pe-

2. See also, Jones v. Liberty Glass Co., 332 U.S. 524, 68 S.Ct. 229, 92 L.Ed. 142.

riod of the statute running. The claim for refund was therefore filed within time.

Let order be submitted in accordance with this opinion.