Babetta SCHMIDT, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 15712.

United States Court of Appeals Ninth Circuit.

Nov. 19, 1959.

Abraham Berry, San Francisco, Cal., for petitioner.

Charles K. Rice, Asst. Atty. Gen., John Pajak, Arthur I. Gould, Harry Baum, Lee A. Jackson, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before CHAMBERS, POPE and HAMLIN, Circuit Judges.

POPE, Circuit Judge.

This case is before us upon petition to review a decision of the tax court rendered on redetermination of deficiency in income tax. Most of the facts which are important to our decision were stipulated. Petitioner, an elderly widow of foreign birth, whose income was derived from rents from real property which she owned, made it a practice to employ each year an accountant whom she entrusted to prepare her tax returns. This continued without incident through the year 1943. The accountant would leave the returns with the petitioner and she would file them. In the year 1944, this accountant prepared for the petitioner a declaration of estimated tax showing an estimated liability of $2473. She paid that sum in four equal installments within the time required by law. No declaration of estimated tax was filed for 1945. The accountant prepared declarations of estimated tax for the petitioner for the years 1946 and 1948 through 1951, which were filed on time; however, the returns, form 1040, for 1944 through 1949, and that for 1951, were not filed on time. The evidence showed that the accountant had been ill during this period and this accounted in part for petitioner's delinquency.

When the 1944 return on form 1040 was filed on June 30, 1952, it showed no liability for any tax. It showed that the $2473 paid on account of the estimated tax for 1944 was an overpayment and asked that this overpayment be credited on the 1945 estimated tax. The 1945 income tax, form 1040, filed at the same time, reflected the $2473 as a payment of a 1945 declaration of estimated tax. The return showed a total tax for 1945 of $3469.44; the liability for that amount was reduced by the $2473, leaving a balance of $996.44, which the petitioner then paid.

Upon receipt of the delinquent returns above stated, the Commissioner assessed the taxes due as disclosed by them, and added 25% penalties pursuant to § 291 (a) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 291(a).

While the problems presented to us on this petition concern in the main the taxes on the returns for the years 1944 and 1945, it should be noted that petitioner also filed on June 30, 1952, her returns for the years 1946, 1947, 1948, 1949 and 1951, all of them then delinquent. Thus upon receipt of the returns for those years, similar penalties were added for the years 1947, 1948 and 1951. After audit of the delinquent returns, the Commissioner in June 1954, determined a deficiency in respect to the years 1944, 1945, 1946, 1947, 1948, 1949 and 1951, and sent the usual 90 day letter giving notice of such deficiency to the taxpayer. He added to the deficiencies for 1945 to

1948 inclusive a 25% penalty pursuant to the same statute. The 90 day letter disclosed an adjustment resulting in a deficiency for 1944 amounting to $95. The Commissioner applied $95 of the $2473 previously mentioned in payment of the deficiency for 1944. No part of the $2473 was allowed or credited upon the deficiency for 1945 as petitioner had requested in her returns for those years.

Before the Tax Court appellant petitioned for a redetermination of the deficiency plus penalties set forth in the Commissioner's notice of deficiency. In the petition, as amended, petitioner sought relief in three respects: first, she alleged that she had relied upon her accountant to see that the returns were filed; that she had not been informed that they had not been timely filed; that when she discovered they were not filed she immediately employed another accountant to take care of them, and that under the circumstances, the failure to file the form 1040 within time was not without just and reasonable cause; that hence no penalties were due and the penalties paid should be refunded. Second, she alleged an overpayment for the tax year 1951 amounting to $125.85, (the stipulation filed in the tax court discloses this overpayment); finally, she alleged the overpayment for 1944 taxes and sought a determination that she was entitled to a credit on her 1945 income tax to the extent of such overpayment.[1]

The Tax Court found that petitioner's failure to file timely returns for the years in controversy was not due to reasonable cause and hence sustained the assessment and determination of the penalties added by the Commissioner. For reasons not disclosed in its findings or opinion, the Tax Court ignored the claim of overpayment for the year 1951.[2]

With respect to petitioner's claim of an overpayment for 1944, and that she was entitled to a credit of the balance of that overpayment, that is to say, $2378, on the 1945 income tax, the court declined to take any action or make any determination on the stated ground that no appeal had been taken from the determination for 1944, the year when the payment in question was made.[3]

■ Whether the delinquency in filing the tax returns was due to reasonable cause and not willful neglect presents a question of fact. This question has been decided against petitioner by the Tax Court before whom she testified in person. We are unable to say that the findings of that court in this respect are clearly erroneous, and its decision with respect to the penalties added we must uphold.

■ However, we find ourselves unable to go along with the refusal of the Tax Court to deal with appellant's 1944 overpayment and the claim for credit on the 1945 taxes. Assuming for the moment that the Tax Court was right in its statement that no appeal was taken with respect to 1944, (we deal with that later), yet the petition definitely did put in issue the 1945 tax. Since there was a deficiency assessment as to that year, there is no

1. The allegation was as follows: "Petitioner's 1944 individual income tax return Form 1040 filed on June 30, 1952, as aforesaid, indicated no liability and requested that an overpayment of $2,473.00 be credited on the 1945 estimated tax. Petitioner's 1945 return, filed on June 30, 1952, as aforesaid, requested that said overpayment of $2,473.00 be credited against the tax for said year. The respondent, however, has determined deficiencies for 1944 and 1945 and has applied a portion of the $2,473.00 in payment of the deficiency for 1944, i. e., $95.-00. But aside from the said $95.00 no part of the $2,473.00 has been allowed in satisfaction of Petitioner's tax liability for 1945, or any later year."

2. The 90 day letter disclosed a correct income tax liability for 1951 of $7349.58. It was stipulated that petitioner made payments on her income tax liability for the year 1951 in the sum of $7475.43, thus showing an overpayment of $125.85.

3. Said the court's opinion: "We could not determine that there has been an overpayment for 1944 because that year is not before us, nor for 1945, since the facts do not show that anything more than the tax due, even on petitioner's own statement, has actually been paid."

question but that a proper petition can vest the Tax Court with jurisdiction to deal with that year's tax. In the language of Peerless Woolen Mills v. Rose, 5 Cir., 28 F.2d 661, 663: "[I]f there is a deficiency assessment, the jurisdiction of the Board extends to the whole controversy, to the end that it may determine or redetermine the correct amount of the tax."[4]

■ Granted that the petition as originally filed did not adequately specify the particulars of the petitioner's complaint, yet it was amended to make the cause of action stated more specific. Even in the most limited sense, the cause of action was the request for a redetermination of deficiency or liability for 1945. (But see footnote 6, infra.) Since this was the cause of action, the amendment was an appropriate one, and it related back to the date of the filing of the original petition. Ethel Weisser, 32 B.T.A. 755, 759; William H. Krome, ¶ 48,118, P.H. Memo T.C.; Factors' & Finance Co. v. United States, 56 F.2d 902, 907, 73 Ct.Cl. 707.[5] The fact that circumstances occurring after the original petition was filed prompted the amendment does not change the operation of the rule. Junso Fujii v. Dulles, 9 Cir., 224 F.2d 906, 907.

■ We therefore consider the allegation of the petition that "the respondent failed and refused to credit against 1945 liability the overpayment of estimated tax for the year 1944 in the amount of $2,473.00." The claim for that credit was made in full conformity with the Regulations. (Hereafter we shall consider whether the claim was filed in time.) Income Tax Regulations, Supplement O, § 39.322–3 provides that such claims by the taxpayer "shall be made on Form 843, or on Form 1040 or 1040A." Subdivision (b) of the same section provides that "A properly executed return on Form 1040 shall, at the election of the taxpayer, constitute a claim for refund or credit within the meaning of § 322 for the amount of the overpayment disclosed by such return." The taxpayer may advise "whether such amount shall be refunded to the taxpayer or shall be applied as a credit against the taxpayer's estimated tax for the taxable year immediately succeeding the taxable year for which such return is filed."

Petitioner did just that. In her 1944 return, after showing (on line 9) the amount of the overpayment claimed, she marked a cross in the appropriate box below, indicating it should be "credited

---

4. Accord: Ohio Steel Foundry Co. v. United States, 38 F.2d 144, 147, 69 Ct.Cl. 158; Peerless Woolen Mills v. Commissioner of Internal Revenue, 13 B.T.A. 1119, 1127. "Briefly, the Board there held that an appeal once properly before it in connection with a deficiency determined and declared by the Commissioner, it was clearly within its province and power to examine into and decide all issues presented for its consideration. Therefore, it is within the jurisdiction of this Board not only to redetermine the taxpayer's deficiency, but to establish as well his tax liability." Lehigh Valley Coal Sales Co., 15 B.T.A. 1401, 1403–1404. Cf. the form of petition prescribed in the Court's Rules of Practice, Rule 7, particularly, subd. (c) (4) (B) par. 3, 26 U.S.C.A. (I.R.C. 1954) § 7453.

5. In that case the court said: "The board has uniformly held that an incomplete or imperfect petition setting forth no grounds or facts, as required by Rule 5 of the board, may be perfected or amended after the time for filing a petition has expired. The board has also held that a taxpayer may amend his petition to restate his case with more accuracy or certainty or to correct a mistake or supply a deficiency so long as it does not thereby declare a new and different cause of action even where the time of limitation has run, and that the nature of the cause of action in general under the original petition is the determination of the correct tax for a certain period."

The general rule is that amendments asserting matters arising out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading relate back to the date of the original pleading. This is stated expressly in the Rules of Civil Procedure, but such is the rule even in the absence of such an express provision. See 41 Am. Jur. "Pleading", § 315; 71 C.J.S. Pleading § 320b, and Moore's Federal Practice, 2nd ed., Vol. 3, p. 850, #15.15.

on [her] 1945 estimated tax." At the same time, in the 1945 return, she claimed credit for the same sum by inserting it in line 7B opposite the words "By payments on 1945 Declaration of Estimated Tax." The claim was properly made. Rittenbaum v. United States, D.C.N.D.Ga., 109 F.Supp. 480, 483. We perceive no reason therefore why the Tax Court did not have jurisdiction to pass upon and determine petitioner's right to this credit upon her 1945 taxes. Of course the claim for the full amount of $2473 could not be allowed in view of the fact that $95 of that sum was properly applied upon the 1944 deficiency. Not only did the court have jurisdiction but as we shall demonstrate shortly, it should have adjudged and determined that petitioner was entitled to the credit for a sum which it is conceded she had overpaid. (The amount of the overpayment in 1944 was stipulated, as was the fact that $95 thereof was applied to the 1944 deficiency. The balance, the appropriate amount of credit for 1945, is ascertained by simply subtracting $95 leaving a credit due of $2378.)

Any suggestion that because we are here dealing with taxes for 1945, the Tax Court cannot look into or investigate the 1944 tax, or that it could not consider the claim for credit because a portion of the claim was inserted on the 1944 return, is plainly unsound and untenable. § 272(g) of the 1939 Code plainly contemplates that the court shall consider facts occurring in other taxable years when necessary to determine a deficiency or a liability in a year in controversy.

That subdivision provides: "The Tax Court in redetermining a deficiency in respect of any taxable year shall consider such facts with relation to the taxes for other taxable years as may be necessary correctly to redetermine the amount of such deficiency, but in so doing shall have no jurisdiction to determine whether or not the tax for any other taxable year has been overpaid or underpaid." 26 U.S.C.A. § 272(g).

The primary issue here is whether petitioner should have that credit for 1945. Hence it became necessary to determine whether a proper claim had been made on which to base that demand for credit and whether moneys had been paid which would constitute a ground for such claim of credit. Precisely applicable here is the language used by this court in Vita-Food Corp. v. Commissioner of Internal Revenue, 9 Cir., 238 F.2d 359, 363: "The brief of the Commissioner suggests that this issue 'was conceivably lurking in the background' but not 'actually projected' in the Tax Court. But it was an inherent part of the complex issue which that tribunal was necessarily required to adjudicate. There is then no encouragement to be given to the Tax Court to adopt rigidities which savor of the most technical days of the common law."

Since it thus plainly appears that the Tax Court had before it the question of the propriety of the claimed credit for 1945, it is unnecessary to consider whether that court also had an independent basis for considering an overpayment for 1944 apart from the claim of credit for 1945.[6]

6. There is well reasoned tax court authority to support the suggestion that an overpayment for 1944 might be adjudged here wholly independent of the claim of credit for 1945. In Wm. H. Krome, ¶48,118 P.H. Memo T.C., the Commissioner determined deficiencies for 1943, 1944 and 1945 and mailed a notice of deficiency covering the three years on March 13, 1947. Taxpayer filed a timely petition to redetermine this deficiency which petition designated the taxes in controversy as for the calendar years 1943, 1945. The petition made no mention of the deficiency for 1944. By an amendment filed May 17, 1948, petitioner changed the allegation so as to refer to the year 1944 as well as to 1943 and 1945. The permission to amend was more than 90 days after the mailing of the notice of deficiency. The Commissioner moved to strike the amendment and dismiss the proceeding as to the deficiency for 1944. The court said: "It is the respondent's theory that under the notice of deficiency here involved there arose in petitioner three distinct and separate causes of action, and that only two of these were put in controversy within the 90 days permitted by the statute, and that the

The principal argument made by counsel for the respondent in this court was that the allowance of the credit claimed was prohibited by the limitations set forth in § 322(b) (2) (A) of the 1939 Code which provides that the amount of a claimed credit or refund "shall not exceed the portion of the tax paid \* \* \* during the three years immediately preceding the filing of the claim." [7]

Counsel's argument that the statute of limitations had run proceeds on the assumption that "payment" of the 1944 tax occurred when petitioner sent the money in with the return of the estimated tax. That assumption is erroneous. The remittances made in 1944 did not constitute payment of the tax at that time for the purpose of starting the running of the statute of limitations. Plankinton v. United States, D.C.E.D.Wis., 164 F.Supp. 912. In the Plankinton case it was held that the remittances of moneys based on estimates of the taxpayer's obligation for the taxable year, at a time when this obligation was not definite and the liability not fixed, was not payment, but that the period of limitations there involved ran from the date of the final return. The court based its decision upon the rationale of the decision in Rosenman v. United States, 323 U.S. 658, 65 S.Ct. 536, 537, 89 L.Ed. 535. In Rosenman, the executrix of a will, contesting the amount of an estate tax with the Commissioner, made a remittance of a sum of money to the Collector "as a payment on account of the Federal Estate tax." The payment was under protest, and for the purpose of avoiding penalties and interest. The amount was placed in a suspended account to the credit of the estate. After payment of additional sums which the Commissioner determined to be due, the executor filed claim for refund which was rejected on the ground that the sums claimed to have been illegally exacted had been paid more than three years prior to the filing of the claim. The court rejected the Government's contention that the claim was filed too late. It said: "The Government does not consider such advances of estimated taxes as tax payments. They are, as it were, payments in escrow. They are set aside, as we have noted, in special suspense accounts established for depositing money received when no assessment is then outstanding against the taxpayer. The receipt by the Government of moneys under such an arrangement carries no more significance than would the giving of a surety bond. Money in these accounts is held not as taxes duly collected are held but as a deposit made in the nature of a cash bond for the payment of taxes thereafter found to be due." 323 U.S. at page 662, 65 S.Ct. at page 538.

In Thomas v. Mercantile Nat. Bank, 5 Cir., 204 F.2d 943, the rule of the Rosenman case was applied to determine the time of payment and it was held that it made no difference whether the Commissioner placed the remittance in a "suspense account" or credited it to the taxpayer's account.[8]

---

amendment in question asserted a new and separate cause of action in the pending proceeding, against which the statute had run.

"We do not agree. This notice of deficiency gave rise to one right of action, namely, the right of petitioner to contest the correctness of the determination of tax liabilities made by respondent for the years 1943, 1944, and 1945. Under the circumstances we do not think that the amendment of the allegations of error in the petition to include one as to the deficiency for 1944 is the assertion of a new and distinct cause of action."

After distinguishing other cases cited the court denied the motion to strike.

7. The pertinent portion of § 322(b) is as follows: "(2) Limit on amount of credit or refund. The amount of the credit or refund shall not exceed the portion of the tax paid—(A) If a return was filed by the taxpayer, and the claim was filed within three years from the time the return was filed, during the three years immediately preceding the filing of the claim." 26 U.S.C.A. § 322(b).

8. Other cases which in some degree recognize or apply the principle expressed

The statute of limitations did not begin to run against allowance of the claimed credit until the date of filing of the 1944 filing return on June 30, 1952; only then was the final tax liability for 1944 ascertainable. We hold that the claim for credit presented here was not barred by limitations.

Accordingly we hold that petitioner is entitled to the credit of $2378 upon her tax for 1945 and should have a redetermination accordingly.

■■ Since this case has been pending in this court our attention has been called to a possible further overpayment upon the 1945 taxes. In the petition for rehearing, which we granted, it was alleged by petitioner's counsel that in June, 1957, following a threat by the Commissioner to seize and sell the petitioner's assets, she paid a further sum of $4330.-60 calculated and made up as follows: An assessment made in October, 1954, of $2473 plus interest of $1276.44, calculated to October 22, 1954, plus additional interest calculated to June 15, 1957. When this case was finally argued in this court following the grant of rehearing the fact of such further payment was not denied. If it was paid, as alleged, it is apparent from what we have said that a further overpayment for 1945 has been made since the amount remaining unpaid on 1945 taxes was no more than $95 with interest.[9]

Whether the said sum of $4330.60 was so assessed and collected does not appear from the record in the Tax Court for the date it is alleged to have been paid is subsequent to the date of the Tax Court's opinion. If it was paid, its collection was not only unauthorized because it was inconsistent with petitioner's rights as determined herein, but the assessment was void for the same reasons which made the assessment void in Jamison v. Repetti, 9 Cir., 239 F.2d 901. The law does not contemplate such collections without first giving the taxpayer notice of the Government's claim and an opportunity to contest it.

Since this case must be remanded for further proceedings, the Tax Court will have an opportunity to make findings, after taking evidence if such be necessary, as to whether the alleged payment of June, 1957, was in fact made.

The judgment of the Tax Court is reversed and the cause is remanded with directions to adjudge that petitioner overpaid her 1951 tax in the sum of $125.85; that she was entitled to a credit of $2378 upon her tax for 1945; and if, after further hearings hereby directed it shall find that additional payments upon the 1945 taxes were exacted in excess of $95 and interest, it shall adjudge such excess, (including in such excess all interest paid) to be an overpayment for 1945. Petitioner is entitled to interest upon any overpayment thus ascertained against which the Commissioner should be entitled to offset interest collectible on the unpaid portion of the 1945 tax not covered by the credit here allowed, from its due date on March 15, 1946.[10] Upon computation of the sums so to be determined, pursuant to Rule 50, or otherwise, the Tax Court shall enter its decision accordingly.

in the Rosenman case are the following: Roles v. Earle, 9 Cir., 195 F.2d 346, 349; Lewyt Corp. v. Commissioner, 2 Cir., 215 F.2d 518, 522–523; Budd Co. v. United States, 3 Cir., 252 F.2d 456, 459; United States v. Dubuque Packing Co., 8 Cir., 233 F.2d 453, 460; Hill v. United States, D.C.N.J., 167 F.Supp. 96.

**9.** As noted above, petitioner's return for 1945 disclosed an income tax for that year of $3469.44. The Commissioner's notice of deficiency determined the correct income tax liability for that year to be $3725.02, and a deficiency of $255.-

58. Upon petitioner's return for that year she deducted the claimed $2473 from the $3469.44 and paid the balance of $996.44. If, as indicated, the assessment last mentioned, was calculated on a basis of $2473, it would indicate that petitioner had previously paid the $255.58 deficiency, something not made explicit in the record.

**10.** These sums would be $996.44 to date of payment on June 30, 1952, and $255.-58 and $95.00 to dates of their respective payments.